Jazz Pharmaceuticals v. Avadel CNS Pharmaceuticals, 2023-11-86 Mr. Horowitz Good morning, Your Honor. And may it please the Court. The FDCA directs innovators to include two kinds of patents for listing in the Orange Book. Those that claim a drug, and those that claim a method of using a drug. Now, what counts as a drug or a method of using a drug is the subject of controlling FDA regulations. And what those regulations say about method patents is that innovators need to list those patents that claim indications or other conditions of use for which approval is sought or has been granted. Now, in this case, there's no dispute that the 963 patent claims elements of the FDA-required Risk Evaluation and Mitigation Strategy, or REMS, for Xyrem. The relevant claims here are to a system consisting of computer memories and a data processor. These don't sound like method of treatment, method of use claims. So, two points on that, Your Honor. The first is that, with respect to the claim construction question, which I'd like to put off for just a moment, the question isn't, is this a system-type claim or a method-type claim, but what is the scope such that there would be infringement? As in, does a claim to a system, a computer-implemented system, read on or be infringed by Avidel using what they would call, say, a method or a plan of procedure instead of a system, as they would call it? But you don't have to get to the claim construction question because the FDA has interpreted method of using to encompass those conditions of use for which approval is sought or has been granted. And there is no question that the patent covers the REMS and that the REMS is a condition of use for which approval was granted. The words of the claims themselves make it clear that it's directed to a system. I hear what you're saying, but you seem to be really making a simple issue already complex. So even if you accept that the claim should be construed as meaning system and not method, there's still the question under FDCA law whether the claimed computer-implemented system constitutes a method of using the drug within the meaning of the statute. We don't apply FDC law here, do we? I mean, this is the Federal Circuit. We apply patent law, the U.S. Patent Law. Well, the question is the interpretation of the FDCA. These are terms codified in the FDCA. So, for example, an evidence position is that this is all patent law. What counts as a drug? What counts as a method of using a drug? But the FDA has issued regulations. For example, it's not a question of patent law whether claiming a drug encompasses claiming a polymorph. FDA has regulation on that. The answer is sometimes it is and sometimes it isn't, depending on certain scientific evidence. As to the method of use question, under the statute, it just says method of using the drug at the relevant time. Does that include off-label uses? FDA has a regulation on that, too. The answer is no. It has to be a condition of use for which approval is sought or has been granted. These are FDCA terms that Congress has charged FDA with interpreting, and its controlling regulation says that a method of use encompasses indications, such as how to treat a given condition, but also conditions of use. FDA considers that its role is ministerial in dealing with the patents and patent law. Absolutely, Your Honor. FDA considers its role ministerial in the question of whether a given patent should be listed. It does not look at the patent claims. It simply accepts the submission. That's the question here, whether it should be delisted. The question is whether it should be delisted under the FDCA question of whether it's claiming a method of using a drug. That question, the FDA does not say it has only a ministerial role in. In fact, it has repeatedly issued rulemaking following notice and comment, and it's told the world exactly what counts as a method of using a drug. It is said, actually, in this particular case, with respect to Jazz and Avidel, that the REMS is a condition of using the drug. So in the dispute over whether Avidel needed— Counsel, isn't it the case that we've already decided that the delisting statute, it specifically evokes U.S. patent law. That's in Apotex case. In Apotex, this court held correctly that it involves a substantial question of patent law, and it described the nature of that substantial question of patent law as essentially an infringement inquiry, i.e., does the drug or method of using the drug, whatever that might be, does it fall within the scope of a patent claim? That's the infringement inquiry, and again, it's not actually disputed. The district court, in the opinion below, at appendix page 2, said that this patent claims the FDA required REMS conditions of using Xyren. In other words, it said that the patent claims exactly what we say it claims, and it said that that's a condition of use. On top of that, when the FDA was asked the question in the context of the certification dispute, what it said was that Avidel was seeking approval of a condition of use claimed by the patent. Now, Judge Lurie? I think I should ask you this question. So how do you make the connection from method of using drug to condition of use? So obviously method and condition are two different words. They are two different words, as is indication. So the question, I think, is really how did FDA make that connection? I think the reason that FDA made that connection has to do with the structure of the Hatch-Watson Act, and in particular- In what regulation did FDA make the connection saying that compliance with a REMS while a condition of use is also a method of use? There isn't an FDA regulation about whether REMS is a condition of use. So there's two steps here. Whether method of use constitutes condition of use, that's a regulation. That's 21 CFR 314.53B1. It's also in the original rulemaking on the subject in October of 1994, the Federal Register notice that Bill Sides cited. On the question of whether a REMS is a condition of use, that is a question that, as I said, the district court actually answered in our favor in the opinion granting the delisting. It's also something- So what a condition of use is in the FDCA context is generally those conditions that bear on approvability, that are material to approvability. The FDA doesn't just say a drug is safe. The FDA says the drug is safe under the conditions under which it's going to be deployed in the marketplace. The classic example is the FDA has to approve based on whether it's over-the-counter or prescription only. Those are conditions of use for the drug for its approvability. In the context of this particular issue, the REMS, it is absolutely a critical condition of use. We're talking about a drug whose active ingredient is the salt form of gamma-hydroxybutyrate, a Schedule I controlled substance that has no medicinal use. The only way this drug got on the market and treated a historically untreated set of patients is by virtue of the REMS, by virtue of the post-marketing restrictions, to assure its safe use. It is absolutely a critical reason why FDA was able to approve it, and it's part of the conditions of use that led to the FDA's decision that it was safe. So I think you were going to – can you get to the point that I think you were deferring about how even if we want to and think we should use the patent law term method as a relevant category, why you think that these claims, these facially system claims, might qualify? Do I understand that that is one of your positions? I would say – roughly, yes. I would say it slightly differently. I would say that even if you think that claim construction is required, and in particular even if you think the question whether you should construe system-to-encompass methods in this context is required, I think you should answer that question in our favor, and I can get to that. So I think the basic confusion with respect to claim construction here is that there are two separate types of inquiries. One is, what category of claim is this? Does this call into question things like divided infringement for method claims, or is this a system-type claim? That's one type of question. That's actually not the question before the court. The question before the court, as made clear in Apotex, is an infringement-type question. What does the claim cover? What does it encompass? So to give an example, if we had absolutely conclusive testimony with Avidel admitting, they do every single thing in these claims. They use a computer to implement something, and they do everything in the claims, but they don't admit that it's a system. They actually call it their computer-implemented method or plan of procedure for having each of the elements of the claim. We would go to the finder of fact and say, we think that you should find it in our favor. They're practicing the claim. They say, it's a system. We say, it's got the word system, but the plain and ordinary meaning of the word system encompasses plans of procedure and methods, and the fact that you're just calling it a method rather than a system doesn't change the scope of the claim. So that's the sense in which a claim can serve. Wouldn't we be better off just looking at the plain meaning of the terms of the claim? And here the claim is directed to a system. It's directed to computer memories, prescription fields, patient fields, the doctor fields, the pharmacy fields. Isn't that a system? So there are other patents in this family that have all of these fields as well, and the preamble language says method instead of system. So it's not that those fields necessarily— Why would I claim that this is a method claim and not a systems claim? Again, Judge Rena, I agree with you that this is a system claim as opposed to a method claim for purposes of categorizing what body of law bears on it, such as for divided infringement problems. But that's not the construction— Why do we need to go any further? Because the question for purposes of claim construction, as this Court made clear in Apotex, is what does the claim cover? What does it read on? What would it be infringed by? And so the question for purposes of is this a computer-implemented system? Does it encompass? Does it read on a method of using a drug? The answer is yes, under the plain meaning of system. Just look in a dictionary for the definition of system. We provided one at—I think it's 2884 of the Joint Appendix. Maybe just another way, I think, of saying what I think Judge Rena is saying. For there to be a method, a claim has to read on a set of actions taken over time. This isn't that. It does read on a set of actions taken over time because under 271A, you can— This reads on a collection of units with certain action capabilities. It does recite those, but my point is that under 271A, what counts as infringement would include the use— So if someone were to use these components with these capabilities, it would read on the method of them having done that. Do I understand right that you all have or have, I guess, actual technical method claims that read on steps, but those are not part of this patent and those are not listed or at least not in front of us? That is correct, but let me make— Getting back to something I think that was said very much earlier in this argument, aren't you unduly complicating something that it makes all the sense in the world to remain very simple? So the very simple point is that the FDA has regulations for what you should list, and it includes conditions of use, and it is important for advancing a key policy of the Hatch-Waxman Act, which is that you want disputes over those patents that cover the features of the drug and its conditions of use that the generics are going to have to copy. In this context, there's absolutely no question. If you want to make a generic version of Xyron or if you want to submit a 505B2 with sodium oxidate as your active ingredient, you're going to need the restrictions to assure safe use that are recited in this patent. And under the Hatch-Waxman Act, the whole point is to accelerate that patent dispute and allow it to be resolved before the product is launched and the public doesn't suffer the harm of withdrawing a product from the market. You want the system next to the method both there. If that's too well into your rebuttal time, you can continue or save it. No, I'll reserve the balance. Thanks so much. Mr. Bale. Good morning, Your Honor, and may it please the Court. I agree with the sentiments that this is overly complicating, something that I think is very straightforward and that the district court got correct. And I think the route to affirmance can go through one of two ways. One, these are indeed computer system claims with two components each. Every single claim has computer memories with certain fields and a data processor that is empowered to enable to do certain things. Those are classic patent law system claims, and the statute directs the courts to apply those principles in the delisting statute when it looks at whether a patent claims a method. Those are three terms that indicate patent law applies. But elsewhere in the statute, it's perfectly consistent. The statute elsewhere refers to method of use patent. That's in subsection B2B. It also refers to patents that claim a method of using such drugs. Those require looking at what the patent claims, and the district court did that here and reached that very straightforward conclusion before you even get to any other things that you might have to look at. What about your opponent's conditions of use argument? And first, was that waived? So here's what I'll say.  We think it was, and we've made that argument, but we could see how the court would want to address it anyway. So in response to the first motion for judgment on the pleadings, they referenced conditions of use but never suggested that patent law shouldn't apply. And so that's the part, patent law applying or not, that we suggested was waived. I'm sorry. I thought in the first round they said, we have a whole separate little section of their motion, whatever the motion was, or the filing was, that by itself is enough. We don't need to get into anything else. And I thought that piece was actually not dependent on patent. But when the motion was redone, they didn't say the same thing. Exactly. So that's why I say it's a little unclear. You could read the first one in that way, but in any event, the second one very clearly doesn't raise it. But we think the merits are straightforward in any event. And turning to your Honor's question, let's look at the regulation that Jazz relies heavily on, and that is at 314.53b1. What it says is this, quote, for patents that claim a method of use. That's how it starts the sentence that they're relying on. For patents that claim a method of use. So we're already confining the world that that can include as patents that claim a method of use. This court knows what those are. And then it goes on to say, here's what you must submit. You must submit information only on those patents that claim indication or other conditions of use. So whatever that other part means, it doesn't purport to expand on the statutory language that's the preamble of that very sentence. Patents that claim a method of use. So we don't think you should read, and consistent with the statute, I don't think FDA would read, those to include things that aren't methods of use. And in fact, when FDA defined elsewhere in its regulations what it meant by conditions of use, and this is at section 310.3, subsection H5, it talks there about what might a new thing be, what might a new method or condition of use be. And what it says there is it's things like dosage,  or other conditions of use. That accords with the common sense understanding of what it means to use a drug. And that, I reference two ways that would be easy to affirm on. That's the second way, taking a step back. Under no ordinary meaning of method of using a drug, even if you're willing to put aside patent law principles, and we don't think you should, but method of using a drug has a common sense meaning. It's taking it or administering it to have some effect on the body. It's a method of administering a drug to treat a bacterial infection, or a sedative, or treat diabetes. Precisely, Your Honor. Very familiar with that. And in the section that I referenced, subsection 5, it reflects that. The immediate preceding subsection, subsection 4, also reflects where FDA has described what a new use of a drug would be. And it says it's things like treating diseases, indications, administering it. I'm sorry. Say again what the point is here, making out of that paragraph 5 in 3010.3, whatever the subsection is, 8. The question was about the conditions of use. And so addressing what FDA itself considers those conditions of use to be. So in 314.53b, we know that it doesn't consider conditions of use to be broader than methods of use patents. It in fact starts that sentence with saying for methods of use claims, here's the ones you must submit, and only those. And then that's also reflected in the subsection H5 that I referenced, the definitional section, 310.3 H5. Which doesn't use the phrase method of use. Correct. But if we're looking at what FDA considers conditions of use to be, it illustrates that it doesn't consider it to be more than things like treating diseases, or indications, or dosages, or things like that. So it just sheds light on conditions of use. But we don't think you even need to get to what conditions. I thought your point about the .43 regulation was that there might be lots of conditions of use, some of which don't in fact involve what the patient is specifically doing. But that sentence says the only ones that we care about for purposes of that sentence are the ones that fall under a method of use. That would be exactly another way of thinking about it. That if you consider conditions of use to be broader than methods of use, and I don't think you should, and I think FDA... Even though the district court thought that compliance with this, coming within this, having this system is a condition of use. Are you disagreeing with the district court on this point? I think you can take that as a given. I will say it was a passing comment on page 2 in route to deciding that these were system claims, not method claims. But if you want to consider rounds to be, quote-unquote, conditions of use, then I think, to Your Honor's other question, that sentence that we are focusing on clearly limits the realm of patents that claim a method of use to not include all conditions of use. So either it's included within methods of use or it doesn't include all of them. What if the claim read, method for treatment of a narcoleptic patient with a prescription drug that has a potential for misuse by employing this REM system? If it ultimately described a method, then it would at least get through the first gate that these must be method claims. If it further provided for using that drug at the end of the day, so steps that ended with, for example, and then go treat the patient, then we're certainly more in the realm of a method of using a drug because you have a step that uses a drug. And that stands in sharp contrast to what we have here,  It's about controlling distribution of these drugs, not use of the drugs. And the FTC spoke to this in its amicus brief in the district court. It explains that under any common understanding of the statute, whether, frankly, whether system or method, these are all about distribution. It used the example of carting drugs in an airplane. So that may be the way you get drugs from point A to point B or a restriction on or a precondition for or a prerequisite for using a drug. But it's certainly a patent on an airplane with drugs in it isn't a use of the drugs in the way you would commonly think about it. Doesn't the fact that this is a dangerous drug that we're talking about and it's subject to a REM, doesn't that put it into a different context than a drug that's not as addictive or as deadly as this particular drug is? Wouldn't the fact that this is so dangerous that Congress has recognized that by putting it as a Schedule II drug, doesn't that change the definition of a method of use? Isn't part of the method a patient's use of the drug connected, intertwined so closely with how you get the drug that we should look at this as a method of use? Not at all, Your Honor. And the reason we know that is when Congress enshrined the REM's systems as prerequisites for certain drugs in 2007, it didn't change the listing statute one whit. The listing statute has been in place here since 2003 and it very clearly provides that patents shall not be listed unless they meet one of two conditions. They must claim a drug or a method of using a drug. And so while REM's, certainly Congress has acknowledged that those are important, REM's, patents on REM's that are just about distribution do not fall within the clear terms of the statute. Can I ask you a question? In the, I think it's the blue brief. Anyway, the other side's brief says that Avidel has filed counterclaims that seek to impose antitrust liability premised on the allegedly improper listing of the 963 in the orange book. Is that true? That is accurate, Your Honor, yes. In this case? In the litigation below. It's in the parallel case technically to this one, but they're all being litigated around the same. Yes, and we think that's absolutely appropriate. We don't need to get into that. Here we think, we think the court need not even go to whether the patents were properly listed at the outset, which we think they clearly were not. They were listed in 2014, 11 years after the delisting statute came into being. Congress passed that in response to the FDA saying we just have a ministerial role and we won't police the delisting of patents. That was in early 2003. Later in 2003, this court came and recognized that the courts didn't have authority at that time to police delisting or provide a delisting remedy. So Congress acted swiftly and decisively and said here is a counterclaim that is effective for delisting patents that neither claim a drug nor a method of using a drug. Can I say one other thing? So in at least a couple of areas of patent law that have come to my mind, one is exhaustion, another is 101 analysis, the Supreme Court has had occasion to say method claims, non-method claims, you can write fundamentally the same thing either way and we shouldn't make something significant to turn on that distinction for at least those two kinds of examples. Why should we not do something similar here? This is an FDCA provision. Should it really make a difference for purposes of delisting and listing all the consequences that that entails? Whether a particular claim is written one way or the other. Even in patent law, sometimes it doesn't make a difference. So a couple of thoughts on that, Your Honor. First, I think you're referring, for example, to the Alice decision where it said the methods and systems are not meaningfully different. And an LG on the exhaustion side. Exactly. And so what the courts did there was look underneath and see what the invention was really trying to get at. But in that case, there wasn't a clear statutory provision that says you shall not list or you shall be entitled to delist, however you want to think about it, other than two separate categories. And so Congress came in responding to abuses of the Orange Book where patents were improperly listed and therefore triggered 30-month stays that should never have been triggered. Congress came in and said, no, we're going to allow you to delist two specific things. And it respectfully did not include systems. It could have. Congress knew about patent law. It could have said, or systems that are somehow related to the distribution of drugs, which is effectively what... Isn't your answer to Judge Carano that this isn't a 101 case? Certainly. It isn't a 101 case. Although, frankly, these claims are very susceptible, but this is absolutely not a 101 case. And under basic principles of apotex, which recognized that it was a patent law question, and the delisting statute that came along shortly thereafter provided two very specific categories. And so this is not a method. It's a system. But even if you back up and decide to look under the hood, as it were, there's nothing about these claims that relates to methods of, or even systems of, using a drug in the common sense understanding that the FDA statute applies and the FDA regs reflect. So unless there are further questions, we would respectfully request that the Court in its first delisting order would thank the Court very much for expediting the hearing on this appeal. I'd be remiss if I didn't note that every day that goes by is a win for Jazz and a loss for those who would desperately love to use Avodale's superior product. So with respect, if the Court sees fit to affirm, and we hope that it does, we would respectfully ask that it lift the stay as expeditiously as possible, perhaps even in advance of a formal opinion. And I don't want to get out of my lane here, but I just wanted to impress that on the Court so that delisting can proceed, as Congress intended, as quickly as possible. Thank you. Thank you, counsel. Mr. Horowitz, three minutes for a bottle. Thank you, Your Honor. Apart from just noting that there's been no finding of superiority over Jazz's transformational product here, I'd just like to make three quick points. Number one, with respect to waiver, we just heard counsel say that the first brief might have made the point that the second brief didn't say the same thing. At page 22 of the red brief, they said we made the same arguments both times, and the FTC responded to our conditions of use argument, 5669 of the Joint Appendix, based on our renewed briefing response, not the original one. That's waiver. As to the definitional regulation, 310.3H5, that counsel referred to, just to be clear, the definition in that regulation is a definition of newness, not conditions of use. But if you look at what it says about conditions of use, it says dosage methods or other conditions of use. So first of all, it's not limited to the methods, and second of all, it clearly encompasses dosage, which no one says is a method. So the definition they're talking about isn't the right kind of definition, and it actually supports our position, not theirs. But the last point I'd like to make is the following.  not whether it's a method. We know that method doesn't mean the same thing in this context as in patent law, because process patents are expressly excluded from methods for purposes of the regulation, but process patents are method patents for purposes of patent law, under Section 100 of the Patent Act. In this context, we also know that the RIMS is a condition of use. Process patents aren't methods of use. They're methods of preparation. They're method patents, though. The point is that process and method, process is excluded, method is included, but under patent law, every single process patent is a method patent. Excuse me, every single method patent is a process patent. The last point I'll make is this. The district court said that this was a condition of use. The FDA said it was a condition of use, and the FDA said its policy is to allow listing of RIMS patents because they are conditions of use. Accordingly, we'd ask that the court vacate the order below and hold that listing was appropriate in this case. Thank you, Your Honor. Thank you to both counsel. The case is submitted.